| | | |
|---|---|---|
| **LINDA BOMBARDIER** | * | **NO. 2021-CA-0590** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **RICHARD CLASEN,** | * | |
| **FARMERS INSURANCE** | | **FOURTH CIRCUIT** |
| **GROUP, AND PROGRESSIVE** | * | |
| **SECURITY INSURANCE** | | **STATE OF LOUISIANA** |
| **COMPANY** | * * * * * * * | |

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 13-1137, DIVISION "B"
Honorable Jeanne Nunez Juneau, Judge
* * * * * *
**Judge Rosemary Ledet***

** * * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

**LOBRANO, J., DISSENTS FOR THE REASONS ASSIGNED BY
JENKINS, J.
JENKINS, J., DISSENTS WITH REASONS**


Bruce C. Dean
Dean Law Firm LLC
P. O. Box 127
Chalmette, LA 70044

Michele Gaudin
MICHELE GAUDIN, LLC
433 Metairie Rd., Suite 100
Metairie, LA 70005
        COUNSEL FOR PLAINTIFF/APPELLEE

James Ryan III
JAMES RYAN III & ASSOCIATES, LLC
201 St. Charles Avenue, Suite 2401
New Orleans, LA 70170


*Judge Ledet was designated as the writer on September 29, 2022.

Margaret Emily Woodward
ATTORNEY AT LAW
1229 N. Tonti Street
New Orleans, LA 70119
    COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED IN PART; AFFIRMED IN PART; JUDGMENT AMENDED; AND JUDGMENT RENDERED**
**October 5, 2022**

*RML*

*TGC*

*DNA*

This is a personal injury suit arising out of a rear-end collision. The appellant, Church Mutual Insurance Company ("Church Mutual"), seeks review of the trial court's judgment granting the motion for judgment notwithstanding the verdict ("JNOV") filed by the appellee, Linda Bombardier ("Ms. Bombardier"), raising the jury's quantum awards. Church Mutual also appeals the trial court's denial of its motion to amend judgment. Ms. Bombardier answered the appeal, seeking a further increase in the quantum awards. For the reasons that follow, we reverse the trial court's judgment on the JNOV in part, reinstate the jury's verdict in part, amend the trial court's judgment to reflect our rulings, and render judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from an October 2012 collision. The vehicle Dr. Richard Clasen ("Dr. Clasen") was operating rear-ended the vehicle Ms. Bombardier was operating on Paris Road in St. Bernard Parish (the "Collision"). Seeking to recover damages she allegedly sustained in the Collision, Ms. Bombardier filed suit against Dr. Clasen and his insurer, Mid-Century Insurance Company (incorrectly named

1

Farmers Insurance Group) ("Mid-Century").[1] In her petition, Ms. Bombardier alleged that she sustained injuries to her neck, back, shoulders, and hands. She also alleged loss of earnings as a physical therapist.[2]

Ms. Bombardier subsequently amended her petition to allege that, at the time of the Collision, Dr. Clasen was on a mission for St. Luke's Evangelical Lutheran Church ("St. Luke"). In her amended petition, she added St. Luke's insurer, Church Mutual, as a defendant. Thereafter, Ms. Bombardier settled her claim against Mid-Century, but reserved her right to pursue any collectible insurance available to Dr. Clasen, specifically the policy provided by Church Mutual to St. Luke.[3]

Before trial, the parties stipulated that Dr. Clasen, Mid-Century, and Church Mutual were liable for the Collision and that Ms. Bombardier "did not cause or contribute to" the Collision. The defendants—Dr. Clasen, Mid-Century, and Church Mutual—reserved "all rights to challenge [Ms.] Bombardier's entitlement to damages or any causal link between the [Collision] and [Ms.] Bombardier's alleged damages and any injuries that might relate to the [Collision]."

---

[1] Ms. Bombardier also named her under-insured motorist carrier, Progressive Security Insurance Company ("Progressive"), as a defendant. Before trial, she settled her claim with Progressive and dismissed Progressive from the suit. Progressive is not a party to this appeal.

[2] At the time of the accident, Ms. Bombardier was a self-employed physical therapist and the sole owner of a physical therapist business—Motion Dynamics, LLC. Ms. Bombardier asserted a damages claim for the loans that she allegedly made to fund Motion Dynamics, LLC, since the accident. Both the jury and the trial court, in ruling on the JNOV, rejected this damages claim, finding Ms. Bombardier was not entitled to any damages for loans attributable to the Collision.

[3] The jurisprudence has named this type of settlement as a *Gasquet* settlement. *See Jones v. Capitol Enterprises, Inc.*, 11-0956, p. 6 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 480 (citing *Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466 (La. App. 4th Cir. 1980)). In *Gasquet*, the plaintiff settled her claim with the defendant's primary insurer for less than policy limits and then proceeded against the defendant's excess insurer. The issue was whether as a result of that settlement the plaintiff released the excess insurer from its liability. Answering that question in the negative, this court held that a defendant may be released with his rights reserved against an insurer.

2

The case proceeded to a four-day jury trial against two defendants—Dr. Clasen (nominally) and Church Mutual—on two issues—medical causation (the nature of Ms. Bombardier's injuries and the extent her injuries were attributable to the Collision) and damages. The jury returned a verdict in Ms. Bombardier's favor. In response to the first jury interrogatory, the jury found it was more likely than not that the Collision was the cause-in-fact of the injuries sustained by Ms. Bombardier. In response to the second jury interrogatory, the jury itemized the damages caused by the Collision and proved by Ms. Bombardier as follows:

| | |
|---|---|
| Past Pain and Suffering: | $0.00 |
| Future Pain and Suffering: | $0.00 |
| Past Medical Expenses: | $51,537.00 |
| Future Medical Expenses: | $30,855.00 |
| Past Lost Income: | $173,608.00 |
| Future Lost Income: | $90,000.00 |
| Loans Attributed to [Collision]: | $0.00 |
| Loss of Earning Capacity: | $0.00 |
| Loss of Life's Enjoyment: | $0.00 |
| Total Damages | $346,000.00 |

On May 20, 2020, the trial court rendered a judgment that included the following provisions:

- Adopted the jury's verdict as the judgment of the court, finding in Ms. Bombardier's favor and against Church Mutual and Dr. Clasen in the total amount of $346,000.00;

- Awarded legal interest from the date of judicial demand, October 8, 2013, until paid;

- Assessed all costs against Church Mutual; and

- Acknowledged Church Mutual's right to a credit for Mid-Century's underlying policy limits of $500,000.00 (the "May Judgment").

In response, Ms. Bombardier filed a JNOV motion; and Church Mutual filed a motion to amend the May Judgment. In its motion to amend, Church Mutual requested that the judgment be amended in three respects: (i) to reflect that it prevailed against Ms. Bombardier as the jury verdict was significantly under the $500,000.00 credit; (ii) to reflect that it owes no legal interest; and (iii) to assess costs against Ms. Bombardier. The trial court denied Church Mutual's motion to amend and granted, in part, Ms. Bombardier's JNOV motion. In granting the JNOV in part, the trial court amended the awards in the May Judgment as follows:

| | |
|---|---|
| General Damages | $217,500.00 |
| Past Medical Expenses | $84,982.41 |
| Future Medical Expenses | $263,910.00 |
| Past Lost Income (No Change) | $173,608.00 |
| Future Lost Income | $180,000.00 |
| Loans Attributed to [Collision] | $0.00 |
| Total Damages | $920,000.41[4] |

This appeal followed. Although Church Mutual asserts five assignments of error,[5] one is dispositive—whether the trial court erred in making an award for injuries the jury determined the Collision did not cause.

---

[4] On June 3, 2021, the trial court amended its reasons for judgment associated with the judgment denying Church Mutual's motion to amend to reflect that its additur brought the damages up to a total of $920,000.41.

[5] Church Mutual assigns the following five errors:

1) The trial court erred in substituting its judgment on quantum for jury decisions that were reasonably supported by the evidence;

2) The trial court erred in making an award for injuries the jury determined were not caused by the [Collision];

**JNOV PRINCIPLES AND STANDARD OF REVIEW**

The governing statutory provision regulating a JNOV is La. C.C.P. art. 1811. This article provides that a JNOV may be granted on the issue of liability, the issue of damages, or both. La. C.C.P. art. 1811(F). Although this article does not specify the grounds upon which a trial court may grant a JNOV, the criteria have been jurisprudentially established. *Templet v. State ex rel. Dept. of Transp. and Development*, 00-2162, p. 5 (La. App. 1 Cir. 11/9/01), 818 So.2d 54, 58.

The jurisprudence has observed that an appellate court reviews a judgment granting a JNOV by applying the same criteria used by the trial court. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829 (La. 1991) (citing *Scott v. Hospital Service District. No. 1*, 496 So.2d 270 (La. 1986)). The jurisprudence has established the following standard for granting a JNOV:

- The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover.

- If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.

- In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

*Anderson*, 583 So.2d at 832 (internal citation omitted and text reformatted).

---

3) The trial court erred in partially granting Ms. Bombardier's motion in limine;

4) The trial court erred in charging all cost to Church Mutual; and

5) The trial court erred in charging Church Mutual for interest not covered by its policy.

The jurisprudence, thus, has established a rigorous standard for granting a JNOV. Under this standard, "[n]either the trial court, nor this court can substitute its evaluation of the evidence for that of the jury unless the jury's conclusions totally offend reasonable inferences from the evidence." *Templet*, 00-2162, p. 5, 818 So.2d at 58. The rigorous standard to be applied when determining whether or not a motion for JNOV should be denied is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact." *Adams v. Voyager Indemnity Ins. Co.,* 02-1333, p. 3 (La. App. 4 Cir. 10/1/03), 858 So.2d 681, 684. A trial court's authority to grant a JNOV under Louisiana Code of Civil Procedure Article 1811 is limited by the jurisprudence to those cases where the jury's verdict is absolutely unsupported by any competent evidence. *Davis v. Lazarus,* 04-0582, p. 8 (La. App. 4 Cir. 3/8/06), 927 So.2d 456, 461 (citing *Selico v. Intercontinental Bulk Tank Corporation*, 98- 0763, p. 9 (La. App. 4 Cir. 5/12/99), 733 So.2d 1240, 1245).

## DISCUSSION

On appeal, Church Mutual concedes that the trial court correctly granted the JNOV, in part, and awarded $17,500.00 in general damages for the aggravation of Ms. Bombardier's shoulder injury (the "shoulder re-injury").[6] Church Mutual, however, contends that the trial court erred in granting the JNOV in all other respects. Stated otherwise, Church Mutual contests the trial court's finding that the

---

[6] Church Mutual's concession is based on the jurisprudence recognizing the inconsistency in a jury's award of substantial special damages for an injury without any corresponding award of general damages. The Louisiana Supreme Court has observed that "[when] a jury has awarded special damages but declined to award general damages, 'as a general proposition,' the verdict may 'often' be so inconsistent as to constitute an abuse of discretion." *Thibodeaux v. Donnell*, 16-0570, p. 9 (La. 1/20/17), 219 So.3d 274, 280.

6

Collision also caused Ms. Bombardier to suffer back and neck injuries and its awarding of the following additional amounts attributable to her back and neck injuries:

- general damages for the neck injury of $100,000.00;

- general damages for the back injury of $100,000.00;

- past medical expense of $33,445.41 (increasing the jury's past medical expenses award to $84,982.41);

- future medical expenses for cervical surgery ($84,518.00), an artificial cervical disc ($92,418.00), and lumbar surgery ($56,119.00) (increasing the jury's future medical expenses award to $263,910.00); and

- future lost income of $90,000.00 "which provides compensation for another year of recovery for the cervical and lumbar surgeries" (increasing the jury's future lost income award to $180,000.00).

The thrust of Church Mutual's position is that the trial court, in granting the JNOV, wrongly set aside the jury's verdict on medical causation. Church Mutual contends that the jury confined its finding of medical causation to Ms. Bombardier's shoulder re-injury.

Ms. Bombardier counters that the jury found all her injuries were caused by the Collision. In support, she cites the jury's affirmative answer to the first jury interrogatory—"[i]s it more likely than not that the [Collision] was the cause in fact of the injuries sustained by [Ms.] Bombardier?" She further counters that Church Mutual agreed the jury erred, as a matter of law, in failing to award any general damages and agreed that a JNOV on quantum of such damages was appropriate. Once the trial court granted a JNOV on any issue, Ms. Bombardier contends, the trial court became the trier of fact on every issue before the jury.

7

Agreeing with Ms. Bombardier, the trial court revisited all the issues before the jury—medical causation and damages. In so doing, the trial court erred in two respects. First, the trial court, by adopting Ms. Bombardier's position, overstated the scope of Church Mutual's agreement. In its reasons for judgment, the trial court observed: "At the hearing on this matter, the parties agreed that the jury erred in failing to award general damages to the Plaintiff. Therefore, the [JNOV] as to general damages is GRANTED and the only issue before the Court in regard to these damages is quantum." But, contrary to the trial court's observation and Ms. Bombardier's position, Church Mutual's agreement was limited to a specific injury—the shoulder re-injury—and specific damages—general damages for the shoulder re-injury. As noted elsewhere in this opinion, Church Mutual's agreement was limited to correcting the inconsistency in the jury's award of substantial past and future special damages for the shoulder re-injury without awarding any general damages for that specific injury. The same inconsistency is not present in the jury's award of no general damages for the neck and shoulder injuries; the jury failed to award any future medical expenses or future lost income for the neck and shoulder injuries.

Church Mutual's agreement did not extend to making any awards for the separate injuries—neck and back injuries—that the jury did not find were caused by the Collision. To the extent the trial court relied on Church Mutual's agreement to grant a JNOV on quantum, in general, it erred. Given there was an agreement to carve out a JNOV limited to one specific injury—the shoulder re-injury—and one

8

specific type of damages—general damages for that injury, we pretermit addressing Ms. Bombardier's argument that the grant of JNOV on any issue renders the trial court the trier of fact on all issues. Here, an agreement of the parties formed the basis for a JNOV on single issue—damages due for a specific injury. The agreement, however, did not transform the trial court into the trier of fact as to any other issue the jury decided. We, thus, turn to the dispositive issue of whether the trial court erred in making an award for injuries the jury determined the Collision did not cause.

The appropriate starting point is an analysis of the jury's answers to the interrogatories. Causation was put to the jury in the first interrogatory, which asked "[i]s it more likely than not that the [Collision] was the cause in fact of the injuries sustained by [Ms.] Bombardier?" The jury's affirmative answer to this interrogatory, if viewed in isolation, is ambiguous because it can be construed to mean that the jury found either all or some of Ms. Bombardier's injuries were caused by the Collision. But, the jury's response to the second interrogatory clarifies any ambiguity.

The second interrogatory asked the jury to set forth the amount it believed would fairly compensate Ms. Bombardier "for injuries and damages caused by the [Collision]." The jury's answer to the second interrogatory demonstrates the jury's finding that the only injury caused by the Collision was Ms. Bombardier's shoulder re-injury. This finding is reflected in the jury's award of future medical expenses in the exact amount that Ms. Bombardier's expert estimated to be the cost of the

future shoulder repair surgery, coupled with the jury's award for future lost wages solely for the time to recover from the future shoulder repair surgery. The jury also declined to award the full amount of past medical expenses, reflecting its finding that not all of Ms. Bombardier's injuries were caused by the Collision.

The trial court acknowledged in its reasons for judgment that the jury only awarded damages for Ms. Bombardier's shoulder re-injury. The trial court, nonetheless, found that "based on the medical evidence and testimony presented at trial . . . [Ms. Bombardier] suffered a neck injury, a back injury and an aggravation to a pre-existing injury to her right shoulder as a result of the [Collision]." This finding, as Church Mutual contends, is the crux of the trial court's error.

Based on this finding, the trial court framed the issue before it on the JNOV as fixing the quantum for each of these three specific injuries—the neck, back, and shoulder re-injury. The flaw in this analysis is that it fails to first address whether a JNOV was warranted on the jury's medical causation finding—a factual finding that the Collision only caused the shoulder re-injury. Simply because a JNOV was warranted to award general damages for the specific shoulder re-injury—given the substantial special damages, including future medical expenses and future lost earnings awarded by the jury for that shoulder re-injury—does not translate into a finding that a JNOV was warranted as to any other specific injury.

The trial court, in ruling on the JNOV, redefined the injury Ms. Bombardier sustained as a result of the Collision to include not only the shoulder re-injury, but also neck and back injuries. The jury, however, only found the Collision caused the

shoulder re-injury. The initial issue presented in reviewing the trial court's grant of the JNOV motion, thus, must be whether reasonable people could have arrived at a verdict that the only injury caused by the Collision was the shoulder re-injury.[7]

The jury heard the testimony of expert witnesses, examined all pertinent medical records, and evaluated Ms. Bombardier's credibility. The jury was informed that Ms. Bombardier was involved in other motor vehicle accidents and that she had a prior work-related accident in 2008 that injured her shoulder. The jury also was informed that Ms. Bombardier's failure to have shoulder surgery to correct her shoulder injury could have contributed to any neck or back problems she experienced. After examining all of the evidence, the jury made a determination regarding medical causation.

Applying the standards for granting a JNOV to the medical causation issue, we find the trial court erred in reversing the jury's finding that the accident caused only Ms. Bombardier's shoulder re-injury. The jury's finding that Ms.

_____

[7] A similar issue was addressed in *Caskey v. Merrick Const. Co.*, 46,886 (La. App. 2 Cir. 3/14/12), 86 So.3d 186, by the dissenting judge. The *Caskey* case was a tort suit in which the trial court granted the plaintiff's JNOV motion as to, among other issues, general damages. The majority in *Caskey* affirmed the trial court. The dissenting judge, however, observed "there is a vast difference between the jury's award of $1,872.50 in general damages and the JNOV awards of the trial judge of $175,000 (pain and suffering and loss of enjoyment of life)" and that this vast difference is due to the definition of the specific injury the plaintiff suffered. The dissenting judge further observed that "[t]he trial court specifically found that [the plaintiff] suffered a herniated disc in the accident, a new and severe injury," but "the jury obviously found that no disc injury occurred in the accident." For this reason, the dissenting judge framed the issue presented in reviewing the trial court's grant of the JNOV motion as "whether reasonable people could have arrived at a verdict that no disc herniation resulted from the accident."

Continuing, the dissenting judge observed that "[t]his issue is different from the question of the amount of damages for pain and suffering which has a different standard of review by both the trial judge in a JNOV review and the appellate court. Again, any judicial reaction to the extremely low and odd quantum figure of $1,872.50 for pain and suffering does not allow the judiciary to find an injury completely different from what the jury reasonably determined." The dissenting judge, thus, would have reinstated the jury's award.

11

Bombardier's only specific injury the Collision caused was the shoulder re-injury cannot be said to be "absolutely unsupported by any competent evidence." *Davis*, *supra*. Simply stated, the requirement that reasonable jurors could not arrive at a contrary verdict cannot be met. The jury was presented with conflicting medical and lay evidence on the causation issue on which it could have reasonably relied to decide that only Ms. Bombardier's shoulder re-injury was caused by the Collision. The trial court, thus, erred in setting aside the jury's finding that the Collision only caused Ms. Bombardier's shoulder re-injury. Given this finding, the trial court likewise erred in awarding additional general and special damages—future medical expenses and future lost income—for Ms. Bombardier's back and neck injuries.

Summarizing, we affirm the grant of the JNOV to award $17,500.00 general damages for the shoulder re-injury; in all other respects, we reverse the JNOV and reinstate the jury's verdict. The jury's verdict, as increased by the $17,500.00 general damages award, sums to $363,500.00, which is less than the $500,000.00 credit due to Church Mutual. Given that Church Mutual is not cast with paying any amount, no legal interest is owed by Church Mutual—an excess insurer. *See McGowan v. Sewerage & Water Bd. of New Orleans*, 555 So.2d 472, 478 (La. 4th Cir. 1989) (citing *O'Donnell v. Fidelity General Insurance Co.*, 344 So.2d 91 (La. App. 2d Cir.1977))) (observing that an excess insurer is liable for legal interest only on the portion of judgment for which it was cast). Likewise, given Church Mutual is not cast with paying any amount, Ms. Bombardier cannot be viewed as the prevailing party and we decline her invitation to cast Church Mutual with court

12

costs. Given these findings, we pretermit an analysis of the evidentiary issues Church Mutual raises on appeal and the issues Ms. Bombardier raises in her answer to the appeal regarding inadequacy of the quantum awards.

## <u>DECREE</u>

For the foregoing reasons, the trial court's judgment granting the JNOV is affirmed in part as to the $17,500.00 general damage award for the shoulder re-injury and reversed in all other respects; except for the increase in the general damage award to $17,500.00 for the shoulder re-injury, the jury verdict is reinstated. The trial court's judgment is amended to delete the awards of legal interest and costs.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that there be judgment in favor of Ms. Bombardier and against Church Mutual in the following manner:

| | |
|---|---|
| General Damages (Shoulder Re-Injury): | $17,500.00 |
| Past Medical Expenses: | $51,537.00 |
| Future Medical Expenses: | $30,855.00 |
| Past Lost Income: | $173,608.00 |
| Future Lost Income: | $90,000.00 |

For a total award of $363,500.00, subject to Church Mutual's credit of $500,000.00.

**REVERSED IN PART; AFFIRMED IN PART; JUDGMENT AMENDED; AND JUDGMENT RENDERED**